UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EPIC REFERENCE LABS, INC., BIOHEALTH MEDICAL LABORATORY, INC. and PB LABORATORIES, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY and CONNECTICUT GENERAL LIFE INSURANCE COMPANY,<br><br>Defendants. | Case No. 3:19-CV-1326-SRU<br><br>Hon. Stefan R. Underhill |

## FIRST AMENDED COMPLAINT AND JURY DEMAND

Plaintiffs Epic Reference Labs, Inc., BioHealth Medical Laboratory, Inc. and PB Laboratories, LLC (collectively the "Laboratories") file this First Amended Complaint and Jury Demand against Defendants Cigna Health and Life Insurance Company and Connecticut General Life Insurance Company (collectively, "Cigna") and state the following good cause in support:

### *Nature of the Action*

1. This is an action for damages pursuant to Florida law, including Sections 627.6131, 627.638, 627.64194, 627.662, and, to the extent applicable, 641.3154 and 641.3155 of the Florida Statutes, together with Florida common law, as set forth in greater detail below.

2. Plaintiffs do not bring any claims pursuant to ERISA or any other federal statute, and expressly disclaim any such claims and causes of action. Plaintiffs seek relief herein solely as to payment claims for which they lack ERISA standing and have no ERISA remedy because they

lack any valid assignment of benefits that would entitle them to assert a claim for relief under ERISA. This lawsuit therefore solely concerns non-ERISA claims and causes of action.

## *Parties*

3. Plaintiff Epic Reference Labs, Inc. is a Florida corporation with its principal place of business at 400 South Australian Avenue, West Palm Beach, FL 33401.

4. Plaintiff BioHealth Medical Laboratory, Inc. is a Florida corporation with its principal place of business at 400 South Australian Avenue, West Palm Beach, FL 33401.

5. Plaintiff PB Laboratories, LLC is a single-member Florida limited liability company with a business address of 400 South Australian Avenue, West Palm Beach, FL 33401. The sole member of PB Laboratories, LLC is Medytox Diagnostics, Inc., which is a Florida corporation with its principal place of business at 400 South Australian Avenue, West Palm Beach, FL 33401.

6. No Plaintiff is a citizen of, or maintains a principal place of business in, the State of Connecticut.

7. Defendant Cigna Health and Life Insurance Company is a Connecticut corporation with its corporate headquarters, principal place of business and nerve center located in this judicial district at 900 Cottage Grove Road, Bloomfield, Hartford County, Connecticut 06002. Cigna Health and Life Insurance Company is an operating subsidiary of Cigna Corporation, which insures and administers individual, family and group health insurance and health benefit plans.

8. Defendant Connecticut General Life Insurance Company is a Connecticut corporation with its corporate headquarters, principal place of business and nerve center located in this judicial district at 900 Cottage Grove Road, Bloomfield, Hartford County, Connecticut

06002. Connecticut General Life Insurance Company is an operating subsidiary of Cigna Corporation which insures and administers group health insurance and health benefit plans.

### *Jurisdiction and Venue*

9. This Court has original diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) as this is an action between Florida plaintiffs and Connecticut defendants with an amount in controversy exceeding $75,000.

10. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(1) because the Defendants are incorporated in Connecticut and maintain their headquarters in this judicial district.

### *General Allegations*

A. **Plaintiffs Provide Medical Testing and Laboratory Services**

11. The Laboratories provide medical testing services, including diagnostic medical testing of patient blood and urine samples, pursuant to the specific orders and instructions of licensed medical professionals. It is such licensed medical professionals, and not the Laboratories, who determine medical necessity and select and prescribe appropriate and necessary testing.

12. Upon performing the required testing pursuant to the specific orders and instructions of licensed medical professionals and reporting the results to the treating medical professional, the Laboratories issue invoices to receive payment for their services. If the patient is a subscriber or beneficiary of a health insurance policy, such as those issued by Defendants herein, the Laboratories issue invoices to insurers for payment of covered services.

B. **Defendants Failed to Pay for Services Rendered**

13. Since at least 2012, the Laboratories provided testing services to individual patients who are subscribers or beneficiaries of commercial, non-Medicare health plans insured or administered by Defendants.

14. As a regular part of their intake procedure, the Laboratories would confirm with Defendants the existence of coverage before providing the testing services ordered by a medical professional.

15. The Laboratories would then provide the specified testing services and, thereafter, direct their invoices for such services to Defendants for payment.

16. Apart from the specific payment defaults giving rise to this lawsuit, Defendants generally accepted responsibility for and paid the Laboratories' invoices for testing services provided to Defendants' subscribers and beneficiaries.

17. In particular, during the period from 2012 through 2017, Defendants actually paid to the Laboratories at least $37,687,349.18 on account of invoices for testing services provided to Defendants' subscribers and beneficiaries.

18. Despite these payments, in other instances Defendants failed to pay the Laboratories' invoices for testing services provided to Defendants' subscribers and beneficiaries.

19. In particular, during the years 2013 through today, Defendants failed to pay invoices of at least $32,074,089.37, all of which remains due, owing and payable to the Laboratories (plus interest).

20. In many instances, Defendants failed to respond to the invoices in any fashion. As a result of Defendants' failure to respond, Defendants incurred an uncontestable obligation under Florida law to pay the amount of all such invoices in an amount of at least $18,736,318.01 (plus interest).

21. The services provided by the Laboratories for which Defendants failed to make payment are covered services under the applicable commercial, non-Medicare health plans insured or administered by Defendants.

22. Additionally, by their course of conduct, including their prior payments to the Laboratories of at least $37,687,349.18 for identical services, Defendants admitted and confirmed that the services provided by the Laboratories are covered services, that the Laboratories are entitled to receive payment for such services, and that Defendants are obligated to make payment for such services.

23. The Laboratories repeatedly demanded payment from Defendants on the open invoices, but Defendants ignored and refused all such demands.

**C.     Defendants are Obligated by Florida Statute to Make Payment to Plaintiffs**

24. The Laboratories are incorporated in Florida, maintain their physical facilities in Florida, and perform all testing services in Florida.

25. The Laboratories are providers within the meaning of Florida law.

26. Defendants issue, insure and administer commercial, non-Medicare health plans in and to subscribers in Florida.

27. All such health plans issued by Defendants in and to subscribers in Florida are governed by Florida law, including but not limited to Chapters 627 (Insurance Rates and Contracts) and 641 (Health Care Service Programs) of Title XXXVII (Insurance) of the Florida Statutes.

28. The Laboratories are non-participating (out-of-network) providers, meaning that they have no direct contract with Defendants governing the provision of their services or the billing and payment thereof. As such, the Laboratories did not agree to accept discounted payments from Defendants for their covered services.

29. The testing services provided to Defendants' subscribers and beneficiaries for which Defendants accepted responsibility and actually made payments of at least $37,687,349.18 were all performed in Florida.

30. The testing services provided to Defendants' subscribers and beneficiaries for which Defendants failed to make payments of at least $32,074,089.37 were all performed in Florida.

31. Defendants are obligated by Florida Statute, including Sections 627.6131, 627.638, 627.64194, 627.662, and, to the extent applicable, 641.3154 and 641.3155 thereof, to pay the Laboratories for testing services provided to Defendants' commercial, non-Medicare subscribers and beneficiaries.

32. Pursuant to Florida Statutes, including Sections 627.6131 and 641.3155 thereof, an uncontestable obligation was incurred to pay the amount of all invoices to which Defendants failed to deliver a timely denial, and that uncontestable obligation is deemed admitted in an amount of at least $18,736,318.01.

33. The Laboratories are entitled to bring this action under both the common law and by Florida Statute, including Sections 627.6131, 627.638, 627.64194, 627.662, and, to the extent applicable, 641.3154 and 641.3155 thereof, to collect payment from Defendants for testing services provided to their subscribers and beneficiaries.

**D.  Plaintiffs' Claims are not Governed by, Subject to or Preempted by ERISA**

34. This is not an action for benefits or relief under ERISA, nor do the Laboratories seek any ERISA remedies herein.

35. The Laboratories assert only state-law statutory and common-law claims and causes of action in this lawsuit.

36. The Laboratories seek only state-law statutory and common-law remedies in this lawsuit.

37. The Laboratories do not assert any assigned or derivative claims in this lawsuit, either pursuant to a valid assignment of benefits or otherwise. Rather, the Laboratories solely assert original claims in their own right, as to which the Laboratories have a direct right of payment and as to which the Laboratories have a direct and independent right of action and remedy.

38. The Laboratories bring this lawsuit independently of any rights held by the subscribers and beneficiaries to whom they provided services.

39. Plaintiffs solely seek payment for services as to which the Laboratories do not have a valid assignment of benefits from the patient subscriber/beneficiary. These claims for which Plaintiffs do not have a valid assignment of benefits consist of (i) claims for which Plaintiffs never obtained any assignment of benefits from the patient whatsoever, and (ii) claims for which any nominal "assignments of benefits" Plaintiffs ostensibly obtained are invalid because they are prohibited by the applicable Cigna policy and consequently of no legal effect. As to all such claims herein, therefore, the Laboratories have no standing to bring an action under ERISA.

40. Expressly excluded from this lawsuit are any claims for payment as to which the Laboratories obtained a valid and permitted assignment of benefits from the patient subscriber/beneficiary assignment where such assignments are permitted and authorized by the applicable Cigna policy.

41. Defendants have an independent legal obligation under Florida law to pay the Laboratories for their testing services, including Florida Statutes Sections 627.6131, 627.638, 627.64194, 627.662, and, to the extent applicable, 641.3154 and 641.3155.

42. Defendants also have an independent legal obligation to pay the Laboratories for their testing services by virtue of their promise to pay and their history of actual payments.

43. For these reasons, ERISA does not govern, apply to or preempt the claims asserted herein.

### E. Plaintiffs' Claims are Ripe for Adjudication by this Court

44. All conditions precedent to payment by Defendants to the Laboratories have been met.

45. The sums claimed herein are past-due and immediately payable.

46. To the extent Defendants failed to deliver a timely denial of the claims asserted herein, an uncontestable obligation was incurred to pay the amount of such invoices, and that uncontestable obligation is deemed admitted. Plaintiffs will move for summary judgment on all such uncontestable claims in an amount of at least $18,736,318.01.

47. The Laboratories repeatedly demanded payment from Defendants for the sums owed herein.

48. The claims asserted herein do not require any further administrative review by or between the parties.

49. All prerequisites to payment have been satisfied.

50. All prerequisites to suit have been satisfied, and the claims asserted herein are ripe for adjudication by this Court.

### Count I - Action for Payment Pursuant to Florida Statute §§ 627.6131, 627.638, 627.64194, 627.662, 641.3154, 641.3155

51. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

52. The Laboratories provided covered services to subscribers and beneficiaries of commercial, non-Medicare contracts of insurance issued by Defendants, all within the meaning of applicable Florida Statutes, including Sections 627.6131, 627.638, 627.64194, 627.662, and, to the extent applicable, 641.3154 and 641.3155.

53.     It was Plaintiffs' regular practice to confirm the existence of coverage before providing the requested services.

54.     Defendants are obligated by Florida Statute, including Sections 627.6131, 627.638, 627.64194, 627.662, and, to the extent applicable, 641.3154 and 641.3155, to pay the Laboratories for testing services provided to Defendants' subscribers and beneficiaries.

55.     Defendants are further obligated to pay the uncontestable obligation imposed by Florida Statute Sections 627.6131 and 641.3155, which obligation arose from the Defendants' failure to respond timely to the Laboratories' invoices.

56.     The Laboratories are entitled to bring this action by Florida Statute Sections 627.6131, 627.638, 627.64194, 627.662, and, to the extent applicable, 641.3154 and 641.3155 to collect payment from Defendants for testing services provided to their subscribers and beneficiaries.

57.     Defendants failed to make payments to the Laboratories of at least $32,074,089.37 for covered services.

58.     The Laboratories are therefore entitled to receive payment from Defendants of not less than $32,074,089.37 plus interest at the applicable statutory rate of 12%.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter judgment in their favor and against Defendants and to award damages in an amount to be determined at trial and in excess of $75,000 (exclusive of interest and costs), and more specifically not less than $32,074,089.37, plus interest at 12% and costs.

## Count II - Breach of Implied Contract/Promissory Estoppel

59. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

60. Before providing services as described herein, the Laboratories had a regular practice of contacting Defendants to confirm the existence of coverage before providing the requested services.

61. In each such instance, the Laboratories expressly and detrimentally relied upon Defendants' express confirmation of coverage before providing the requested services.

62. Consistent with this protocol and course of dealing, Defendants actually paid to the Laboratories at least $37,687,349.18 on account of their invoices for testing services identical to those at issue herein.

63. The Laboratories relied on Defendants' confirmation of coverage and the parties' course of dealing in providing services for which they are entitled to payment in an amount of at least $32,074,089.37.

64. By virtue of their express confirmation of coverage and the parties' course of dealing, Defendants are estopped from denying the Laboratories' claims.

65. By virtue of their express confirmation of coverage and the parties' course of dealing, Defendants are estopped from denying their obligation to pay the Laboratories for their services.

66. By virtue of their prior course of dealing and payment to the Laboratories at least $37,687,349.18, Defendants are estopped from denying the Laboratories' claims.

67. By virtue of their prior course of dealing and payment to the Laboratories at least $37,687,349.18, Defendants are estopped from denying their obligation to pay the Laboratories for their services.

68. Defendants failed to make payment to the Laboratories on invoices in an amount of at least $32,074,089.37, all of which remains due, owing and payable.

69. The Laboratories repeatedly demanded payment of their open invoices, but Defendants ignored and refused all such demands.

70. Defendants are therefore obligated to make payment to the Laboratories in an amount of at least $32,074,089.37, and the Laboratories are entitled to recover such payment herein.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter judgment in their favor and against Defendants and to award damages in an amount to be determined at trial and in excess of $75,000 (exclusive of interest and costs), and more specifically not less than $32,074,089.37, plus interest and costs.

### Count III - *Quantum Meruit*

71. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

72. The Laboratories rendered services to individual patients who are subscribers or beneficiaries of commercial, non-Medicare health plans insured or administered by Defendants.

73. The services rendered by the Laboratories to Defendants' subscribers/beneficiaries are covered services under the health plans insured or administered by Defendants.

74. The services rendered by the Laboratories to Defendants' subscribers/beneficiaries have a reasonable value of at least $32,074,089.37, which amount remains unpaid.

75. Defendants, through a course of dealing and payment to the Laboratories at least $37,687,349.18, are obligated to pay for the testing services that the Laboratories provided in reliance on the Defendants' prior conduct.

76. Defendants are obligated on a *quantum meruit* basis to make payment to the Laboratories in an amount of at least $32,074,089.37, and the Laboratories are entitled to recover such payment herein.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter judgment in their favor and against Defendants and to award damages in an amount to be determined at trial and in excess of $75,000 (exclusive of interest and costs), and more specifically not less than $32,074,089.37, plus interest and costs.

### Count IV - Third Party Beneficiary Claims

77. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

78. Defendants are parties to contracts of health insurance with their subscribers by which Defendants agreed to make payment to medical providers such as Plaintiffs for medical care and services provided to the subscribers.

79. Defendants' contracts of health insurance were issued under and in compliance with Florida law.

80. It was the clear and manifest intent of Defendants and their subscribers, and it was required by Florida statute, that medical providers such as Plaintiffs have the benefit of such payment for medical care and services provided to the subscribers.

81. Plaintiffs provided proper written proof of the medical care and services they provided to Defendants' subscribers.

82. Defendants failed to make payment to Plaintiffs for medical care and services provided to the subscribers as described herein.

83. Plaintiffs have been damaged as a direct result of Defendants' failure to make payment for medical care and services provided to Defendants' subscribers.

-13-

84. Plaintiffs are therefore entitled to bring this action for payment as third-party beneficiaries have been damaged as a direct result of Defendants' failure to make payment for medical care and services provided to Defendants' subscribers.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter judgment in their favor and against Defendants and to award damages in an amount to be determined at trial and in excess of $75,000 (exclusive of interest and costs), and more specifically not less than $32,074,089.37, plus interest and costs.

*Plaintiffs demand trial by jury*.

**WHITEFORD TAYLOR & PRESTON LLP**
/s/ *Scott Michael Hare*
Scott M. Hare, Esquire
Admitted *pro hac vice*

200 First Avenue, Third Floor
Pittsburgh, PA 15222

Tel: 412-275-2399
Fax: 412-275-2406

share@wtplaw.com

*Counsel for Plaintiffs*

Date:   January 11, 2021