## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

EPIC REFERENCE LABS, et al.,
      Plaintiffs,

      v.

CIGNA, et al.,
      Defendants.

No. 3:19-cv-1326 (SRU)

### RULING ON MOTION TO DISMISS

Three Florida testing centers, Epic Reference Labs, Inc., BioHealth Medical Laboratory, Inc., and PB Laboratories, LLC (collectively, the "Laboratories"), filed the instant case against two insurance companies, Cigna Health and Life Insurance Company and Connecticut General Life Insurance Company (collectively, "Cigna") in Hartford Superior Court. The lawsuit challenges Cigna's failure to pay at least $32,074,089.37 for the Laboratories' testing services.

After Cigna removed the case to this Court on the ground that the claims for relief were entirely preempted by the Employment Retirement Income Security Act ("ERISA"), the Laboratories moved to remand the case to Connecticut state court. Because further information was needed to determine whether subject matter jurisdiction was present, I denied the motion without prejudice. I directed the parties to engage in informal discovery to identify whether the claims for reimbursement at issue were validly assigned to the Laboratories, which would render the claims completely preempted by ERISA.

On November 5, 2020, Cigna filed a status report, noting that the parties had exchanged certain information and further indicating that the Laboratories had received assignments with respect to forty of the claims for reimbursement at issue. In response, the Laboratories noted that they intended to proceed only with the claims for reimbursement for which they did not receive a

valid assignment.  Following a status conference, the Laboratories filed an amended complaint, expressly disclaiming any claims for reimbursement for services provided to beneficiaries of an ERISA plan and only pursuing payment for services to which the Laboratories do not have a valid assignment of benefits from the patient subscriber/beneficiary.

Now before me is the Laboratories' motion to dismiss the amended complaint for failure to state claim.  For the reasons that follow, the motion is **granted** in part and **denied** in part.

## I.      Standard of Review

### A.  Rule 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof."  *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face."  550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  The plausibility standard set forth in *Twombly*

and *Iqbal* obligates a plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted).  Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely."  *Id.* at 556 (quotation marks omitted).

## II.    Background

### A.  Allegations

The Laboratories are Florida-based health centers that provide medical testing services pursuant to the orders and instructions of medical professionals.  Am. Compl., Doc. No. 47, at ¶¶ 9, 11.  Since at least 2012, the Laboratories have provided testing services to patients who are "subscribers or beneficiaries of commercial, non-Medicare health plans insured or administered by" Cigna.  *Id.* at ¶ 13.  Prior to each test, the Laboratories confirm with Cigna that the services are covered and obtain authorization to provide such services.  *Id.* at ¶¶ 13–14, 21.  Thereafter, the Laboratories direct their invoices to Cigna.  *Id.* at ¶ 15.

Despite repeated requests from the Laboratories, Cigna has failed to make timely payments against invoices totaling at least $32,074,089.37, all of which remain due.  *Id.* at ¶ 19.  Because the Laboratories are out-of-network providers, they do not have an express contract with Cigna governing the provision of their services or the billing and payment thereof.  *Id.* at ¶ 28.

### B.  Procedural History

The Laboratories brought suit in Connecticut Superior Court on July 25, 2019, propounding four causes of action against Cigna: (1) failure to pay as required by Florida statutes §§ 627.6131, 627.638, 627.64194, 627.662, 641.3154, and 641.3155; (2) breach of implied

contract/promissory estoppel; (3) *quantum meruit*; and (4) unjust enrichment. Compl., Doc. No. 2-1, at ¶¶ 51–84.

Cigna removed the case to this court on August 28, 2019. In its notice of removal, Cigna claimed that the case was removeable under federal question jurisdiction because the Laboratories' claims arose under and were therefore completely preempted by ERISA. *See* Notice of Removal, Doc. No. 1.

A week later, on September 4, 2019, Cigna moved to dismiss the case. *See* Mot. to Dismiss, Doc. No. 16. On September 27, 2019, the Laboratories moved to remand the case to Connecticut Superior Court, arguing that this Court lacks federal question jurisdiction because the Florida statutory and common law causes of action are not wholly preempted by ERISA. *See generally* Mot. to Remand, Doc. No. 25.

On August 6, 2020, after the motion to remand was fully briefed, I held a hearing, during which I denied without prejudice both the motion to remand and the motion to dismiss. *See* Doc. No. 37. In doing so, I explained that I needed additional information to determine whether the court had subject matter jurisdiction and, in particular, to determine whether the Laboratories had a valid assignment of benefits for the claims for reimbursement at issue. *See* Tr., Doc. No. 38, at 4–5, 7, 13. I therefore directed the parties to engage in informal discovery over the course of sixty days to "determine whether the policies at issue are governed by ERISA and contain claim assignment provisions." *See* Order, Doc. No. 37. I advised the plaintiffs to file a renewed motion to remand if subject matter jurisdiction was still in dispute or a status report if the jurisdictional issue had been resolved. *Id.*

On November 5, 2020, Cigna filed a status report, providing that on September 4, 2020, the Laboratories produced spreadsheets reflecting certain information about the claims for

reimbursement at issue, including patient names, dates of service, and whether the Laboratories had an assignment of benefits from each patient. *See* Doc. No. 39, at 2. According to Cigna, the spreadsheets included only a member identification number for a limited number of claims for reimbursement and Cigna was only able to search for patients for which such information was provided. *Id*. Cigna further noted that, on October 5, 2020, it provided the Laboratories with a chart setting forth additional information about the applicable ERISA plans for forty of the patients for whom the Laboratories claimed to have an assignment of benefits. *Id.*; *see also* Doc. No. 39-2, at 8–11 (Cigna's chart).

On November 17, 2020, the Laboratories replied, indicating that they had demonstrated to Cigna that a "substantial majority" of the claims for reimbursement at issue pertain to services for which they did not receive an assignment of benefits. *See* Doc. No. 40, at ¶¶ 6, 8. According to the Laboratories, they also informed Cigna that they intended to proceed only with the claims for reimbursement for which there were no valid assignments and requested policy documents for such claims; Cigna, however, refused to provide such information. *Id*. at ¶¶ 9–10.

I scheduled a conference call for December 21, 2020, during which I again addressed the question of subject matter jurisdiction. At the start, I explained that the defendants appeared to have properly removed the case to federal court, given that the record substantiates that at least some of the claims for reimbursement at issue arise out of assignments that have been provided to the plaintiffs by beneficiaries of the insurers. *See* Doc. No. 45, at 1. I noted further that the complaint, as it currently stands, broadly covers those claims for reimbursement, and therefore denied the motion to remand. *Id*. I elaborated, however, that if the plaintiffs amend their complaint to exclude the claims for reimbursement for which they have received valid assignments, I may then be in a position to remand pursuant to *Mine Workers v. Gibbs*, 383 U.S.

715 (1966), because only state law claims would remain in the case.  *Id.*  I granted the plaintiffs'

request for twenty-one days within which to file an amended complaint and noted that I expected

briefing would then follow on the issue whether I should exercise my discretion to remand.  *Id.*

On January 11, 2021, the plaintiffs filed an amended complaint, expressly stating that the

"Laboratories do not assert any assigned or derivative claims in this lawsuit, either pursuant to a

valid assignment of benefits or otherwise," and instead only assert "original claims in their own

right, as to which the Laboratories have a direct right of payment and as to which the

Laboratories have a direct and independent right of action and remedy."  Doc. No. 47, at ¶ 37.

The complaint adds: "Plaintiffs solely seek payment for services as to which the Laboratories do

not have a valid assignment of benefits from the patient subscriber/beneficiaries."  *Id.* at ¶ 39.

Significantly, the plaintiffs no longer appear to seek remand, given that the complaint states that

I enjoy diversity jurisdiction. *Id.* at ¶ 9.

Thereafter, on February 1, 2021, Cigna filed the instant motion to dismiss, asserting that:

(1) the claims for relief are, in whole or in part, preempted by ERISA, (2) the claims for relief

should be dismissed for failure to state a claim.  *See* Doc. No. 51.  After the motion was fully

briefed, I held oral argument on September 9, 2021.

## III.    Discussion

### A.    ERISA Preemption

The parties disagree about both whether and, if so, how ERISA preempts the

Laboratories' claims for relief.  *Compare* Cigna's Memorandum of Law in Support of its Motion

to Dismiss ("Cigna's Mem. of Law"), Doc. No. 51-1, at 8 *to* Laboratories' Brief in Opposition to

Defendants' Motion to Dismiss ("Laboratories' Opp'n"), Doc. No. 57, at 8.  After careful

review, I agree with Cigna that ERISA Section 514 controls and that ERISA preempts some of the Laboratories' state-law claims for relief.

ERISA governs any "plan, fund, or program" that is "established or maintained" by an employer for the purpose of providing certain benefits (including medical coverage) to its employees or their beneficiaries. 29 U.S.C. § 1002(1). The statute preempts state law in two ways. First, Congress intended that federal law occupy the field, so ERISA completely and offensively preempts certain state-law causes of action. 29 U.S.C. § 1132(a)(1)(B) ["Section 502"]. Second, ERISA expressly and/or defensively preempts plaintiffs from raising certain state-law claims for relief. *Id.* § 1144(b)(2)(B) ["Section 514"]. Because the parties' briefs address both provisions, I will do so, too.

1. *Complete Preemption Under Section 502*

The Laboratories contend that their claims are not "completely preempted" by ERISA because, under *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004), they have no valid assignment of benefits and thus lack ERISA standing to pursue an ERISA remedy. *See* Am. Compl., Doc. No. 47, at ¶¶ 34-43; Laboratories' Opp'n, Doc. No. 57, at 8. But that argument addresses jurisdictional considerations and is inapposite at this stage of the proceedings, because diversity jurisdiction exists.

With Section 502, Congress intended to preempt state laws expanding remedies for breached ERISA plan obligations by rendering federal civil enforcement exclusive. 29 U.S.C. § 1132(a). The relevant portion of Section 502 provides that a participant or beneficiary of an ERISA-covered plan may sue to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Id.* § 1132(a)(1)(B). Accordingly, Section 502(a) completely preempts

certain state-law claims for relief and subjects them to removal to federal court, and it "converts an ordinary state common law complaint into one stating a federal claim for the purposes of the well-pleaded complaint rule." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66-67, 64 (1987).

The upshot is that Section 502 complete preemption is "really a jurisdictional rather than a preemption doctrine," in effect "confer[ring] exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim." *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 327–28 (2d Cir. 2011) (quoting *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F. 3d 594, 596 (7th Cir. 2008)); *see also Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 234 n.21 (3d Cir. 2020) ("Complete preemption is a separate, jurisdictional doctrine that in this context arises out of section 502(a)."); *Greenbrier Hotel Corp. v. Unite Here Health*, 719 F. App'x 168, 178 (4th Cir. 2018) ("In addition to this evolving standard for *substantive* ERISA preemption, a parallel line of cases developed the law on the related—but doctrinally distinct—issue of preemption as a *jurisdictional* inquiry for purposes of removal to federal court. This distinct jurisdictional inquiry requires analysis under the 'complete preemption doctrine,' as opposed to the 'conflict preemption doctrine,' because even a case implicating a state law that *conflicts* with ERISA is not 'properly removable to federal court' unless that state law is *also* 'completely preempted' by ERISA's civil enforcement provision, § 502(a).") (emphasis original) (cleaned up); *K.B. by & through Qassis v. Methodist Healthcare - Memphis Hosps.*, 929 F.3d 795, 800 (6th Cir. 2019) (explaining that "[t]here are two forms of ERISA preemption: express preemption (which applies broadly) and complete preemption (which applies narrowly)").

In the instant case, the Laboratories previously contested this Court's subject matter jurisdiction and moved to remand their state-law causes of action to state court. *See* Laboratories' Mot. to Remand, Doc. No. 25.  But, in their amended complaint, the Laboratories assert that this Court has diversity jurisdiction and seem no longer to seek remand.  Am. Compl., Doc. No. 47, at 3.  Thus, jurisdiction is no longer contested.

Consequently, the Laboratories' reliance on Supreme Court and Second Circuit precedent analyzing Section 502 misses the mark.  Laboratories' Opp'n, Doc. No. 57, at 8-9.  For example, the Laboratories rely on *Aetna Health Inc. v. Davila* to argue that that their causes of action should survive this motion to dismiss because the Laboratories lack ERISA standing and so can only bring their state-law claims for relief as non-ERISA claims.  *Id.* (citing to 542 U.S. 200, 214 n.4 (2004)).  *Davila* is inapposite, because it arose in the context of complete preemption.  There, the plaintiffs refused to amend their complaints to bring ERISA causes of action; after the federal district court dismissed their state-law causes of action with prejudice, they appealed the trial court's holding that their claims were preempted and its refusal to remand.  *Davila*, 542 U.S. at 205.  The Supreme Court fashioned a test permitting certain state-law cause of action otherwise outside federal jurisdiction to be heard in federal court.  *Id.* at 209-10.  But it nevertheless concluded that the plaintiffs' state-law claims were preempted, subject to exclusive federal jurisdiction, and removable.  *Id.* at 221.  The Laboratories also rely on two Second Circuit cases, *McCulloch Orthopaedic Surgical Services, PLLC v. Aetna Inc.*, 857 F.3d 141 (2d Cir. 2017), and *Montefiore Medical Center v. Teamsters Local 272*, 642 F.3d 321 (2d Cir. 2011), with a similar posture and that also principally addressed whether to remand the plaintiffs' state-law claims.[1]

---

[1] Cigna also seeks support from decisions with a similar posture.  Cigna's Mem. of Law, Doc., 51-1, at 9.  Several of those cases, therefore, are also inapposite.  *E.g.*, *Curcio v. Hartford Fin. Servs. Grp.*, 469 F. Supp. 2d 18, 24 (D. Conn. 2007) ("Accordingly, plaintiff's quantum meruit claim . . . falls within the scope of ERISA § 502(a)(1)(B) and is therefore completely preempted . . . , and plaintiff's Complaint was thus removable to federal court.); *Gianetti*

Because the Laboratories have now affirmatively asserted federal jurisdiction on the basis

of complete diversity, the reasoning of decisions addressing Section 502 preemption are not

necessarily pertinent to my decision on the motion to dismiss.  Indeed, whether the Laboratories'

claims are completely preempted by Section 502 need not be resolved.  The relevant preemption

provision of the ERISA is Section 514, which applies when parties raise state-law claims in

federal court that may be preempted by the ERISA.

### 2.  *Express Preemption Under Section 514*

The Laboratories raise two types of state-law claims, which I will consider under Section

514.  Count I raises state-law claims pursuant to Florida Statutes §§ 627.6131, 627.638,

627.64194, 627.662, 641.3154, and 641.3155 for payment for services provided by a third-party

healthcare provider.  *See* Am. Compl., Doc. No. 47, at 8.  Counts II through IV raise claims

sounding in common law.  Cigna moves to dismiss the Laboratories' claims, arguing that all or at

least some are expressly preempted by ERISA because they impermissibly "relate to" employee

benefit plans covered by ERISA.  Cigna's Mot. to Dismiss, Doc. No. 51, at 1.  To the extent that

the Laboratories' state-law statutory claims arise from claims for reimbursement for services

provided to subscribers and beneficiaries of ERISA plans, I agree with Cigna that some of the

Laboratories' claims are preempted by ERISA.

Pursuant to the Section 514 "Preemption Clause," ERISA "shall supersede any and all

State laws"— statutes as well as common law causes of action— "insofar as they may now or

hereafter *relate to* any [ERISA-covered] employee benefit plan."  29 U.S.C. § 1144(a) (emphasis

added); *id.* § 1144(c)(1) ("The term 'State law' includes all laws, decisions, rules, regulations, or

---

*v. Blue Cross & Blue Shield of Connecticut, Inc.*, No. 3:07CV01561PCD, 2008 WL 1994895 (D. Conn. May 6, 2008) (dismissing under § 502).

other State action having the effect of law. . . .").  The "Savings Clause" excepts state laws "which regulat[e] insurance" from ERISA preemption.  *Id*. § 1144(b)(2)(A).  But, under the "Deemer Clause," a state law that "'purport[s] to regulate insurance' cannot deem an employee benefit plan to be an insurance company."  *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 44-45 (1987) (quoting 29 U.S.C. § 1144(b)(2)(B)).

The Supreme Court has recognized two categories of state laws expressly preempted by ERISA.  First, ERISA expressly preempts state law that has an impermissible "connection with" ERISA plans, "govern[ing] . . . a central matter of plan administration" or "interfer[ing] with nationally uniform plan administration."  *Egelhoff v. Egelhoff*, 532 U.S. 141, 147 (2001) (cleaned up).  Second, the ERISA expressly preempts state law that has a "reference to" ERISA plans, where it "acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation."  *Gobeille v. Liberty Mut. Ins. Co.,* 577 U.S. 312, 319 (2016) (cleaned up).  But "not every state law that affects an ERISA plan or causes some disuniformity in plan administration" is preempted.  *Rutledge v. Pharmaceutical Care Management Association,* 141 S. Ct. 474, 480 (2020).  Some apply in "too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan."  *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100 n.21 (1983).

a.   "Connection With" ERISA Plans

When assessing whether a state law has an impermissible connection with an ERISA plan, I am guided by the underlying objectives of the ERISA as well as "the nature of the effect of the state law on ERISA plans," *Gobeille*, 577 U.S. at 320 (citation omitted), and on the "traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and

11

its beneficiaries," *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 245 (5th Cir. 1990).

I begin with the objectives of the ERISA, a "comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 137 (1990) (citation omitted).   Toward that end, Congress sought to establish a "uniform body of benefits law," reducing the administrative and financial burden of "complying with conflicting directives" by "set[ting] various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility, for both pension and welfare plans." *Id.* (citation omitted).   Importantly, "ERISA does not guarantee substantive benefits. The statute, instead, seeks to make the benefits promised by an employer more secure by mandating certain oversight systems and other standard procedures." *Gobeille,* 577 U.S. at 320.   Accordingly, ERISA preempts any state law that "forc[es] plans to adopt any particular scheme of substantive coverage," requires plan administrators "provide any particular benefit to any particular beneficiary in any particular way," "govern[s] central matters of plan administration," or has "acute, albeit indirect, economic effects" compelling a substantive coverage scheme. *Rutledge,* 141 S. Ct. at 480, 482.

Here, Count I of the amended complaint includes factual allegations that Cigna failed to provide the Laboratories the benefits to which they are entitled under the terms of healthcare plans in compliance with Florida's prompt payment statute. *See, e.g.*, Am. Compl., Doc. No. 47-1, at ¶ 21 ("The services provided by the Laboratories for which Defendants have failed to make payment are covered services under the applicable commercial, non-Medicare health plans insured or administered by Defendants.").   The salient Florida statutes regulate payments to third-party healthcare providers.   Under Section 627.64194, "[a]n insurer is solely liable for

payment of fees to a nonparticipating provider of covered nonemergency services provided to an insured in accordance with the coverage terms of the health insurance policy. . . ."  Fla. Stat. Ann. § 627.64194(3).  A proper electronic claim "must be paid or denied" within 90 days; if the insurer neither pays nor denies the claim within 120 days after receipt, it incurs an "uncontestable obligation" to pay.  Fla. Stat. Ann. § 627.6131(4)(e).  For non-electronically submitted claims, the statute contemplates a deadline of 120 days for payment or denial and 140 days to incur an uncontestable obligation.  *Id*. § 627.6131(5).

Here, like the law held preempted by ERISA in *Gobeille v. Liberty Mutual Insurance Co.*, the statutes interfere with uniformity of plan administration.  577 U.S. 312 (2016).  In *Gobeille,* a case to which Cigna cites, a Vermont law required health insurers and providers, among other entities, to report detailed information about claims and plan members.  *Id.*  The Supreme Court held that the Vermont law intruded on "a central matter of plan administration" and also "interfered with nationally uniform plan administration."  *Id*. at 315, 323.  In so holding, the Court stressed that Congress's imposition of reporting and disclosure requirements were "extensive" and "fundamental components" of ERSIA's regulation of plan administration, which Congress expressly charged the Secretary of Labor with carrying out.  *Id*. at 322-23.

With respect to prompt notice and payment, Congress has evinced the intent to promote uniformity across plan administration.  Under ERISA, employee benefit programs shall provide "adequate notice" to participants or beneficiaries regarding denial of their insurance claims.  29 U.S.C. § 1333.  Pursuant to the Secretary of Labor's express authority to promulgate regulations "necessary and appropriate" to carry out that provision, *id*. § 1335, federal regulations provide that "if a claim is wholly or partially denied, the plan administrator must notify the claimant of the plan's adverse benefit determination within a reasonable period of time, but not later than 90

days after receipt of the claim by the plan," unless "otherwise provided" or a special exception is warranted. 29 C.F.R. § 2560.503-1(f)(1).

The Second Circuit has not directly addressed whether a state prompt payment law has an impermissible connection with ERISA plans, but other circuit courts have.  In one example, the Eleventh Circuit concluded that Georgia's prompt payment law overly burdened ERISA plans by imposing administrative compliance with payment deadlines that conflict with centralized plan administration.  *See Am.'s Health Ins. Plans v. Hudgens*, 742 F.3d 1319, 1331 (2014).  There, Georgia required that "'insurers' either pay a claim for benefits, or give notice why a claim would not be paid, within fifteen working days after receipt of a claim." *Id.* at 1325.  The *Hudgens* court reasoned that the "timeliness requirements fl[ew] in the face of one of ERISA's main goals: to allow employers to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits." *Id.* (cleaned up).  Accordingly, the Eleventh Circuit held that the statute's challengers were likely to succeed on the merits and preliminarily enjoined implementation of the Georgia statute as applied to self-funded plans and third-party administrators.  *Id.*

Like the Georgia law, the Florida statutes on which the Laboratories rely risk "compel[ling] certain action (prompt benefit determinations and payments) by plans and their administrators" and "impact the amount paid to beneficiaries in the case of late payment or notice." *Id.*  The logic of *Hudgens* is persuasive here.

Accordingly, to the extent that the Laboratories state-law statutory claims arise from services provided to beneficiaries of ERISA plans, those claims are preempted and dismissed with prejudice.  To the extent that the Laboratories raise state-law statutory claims arising from services provided to insureds under privately-purchased insurance, such claims may proceed.

14

Next, in Counts II through IV, the Laboratories' raise common law causes of action for breach of implied contract, *quantum meruit*, and third-party beneficiary claims based on purported representations by Cigna to reimburse them for services rendered to Cigna's insureds. At this stage in the proceedings, without the benefit of discovery, it is not clear whether the common law claims relate to services provided to beneficiaries of ERISA plans or not.

The Supreme Court has held that ERISA does not necessarily preempt "[r]un-of-the-mill state-claims" by non-ERISA entities even against ERISA plans. *Mackey v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 833 (1988). Thus, I again turn to the objectives of the ERISA to evaluate the Laboratories' claims for relief. In the context of Section 502, the Second Circuit has reasoned that leaving third-party providers "without a remedy to enforce promises of payment made by an insurer" does not advance the "principal purpose" of ERISA, "protect[ing] plan beneficiaries and participants," because "risk of non-payment might lead medical providers to decide not to treat, or to otherwise screen, patients who are participants in certain plans." *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc*., 857 F.3d 141, 148 (2d Cir. 2017). For support, the Second Circuit cited to *Lordmann Enterprises, Inc. v. Equicor, Inc*., 32 F.3d 1529, 1533 (11th Cir. 1994), an on-point Eleventh Circuit decision. There, the Eleventh Circuit analyzed claims under Section 514 and held that ERISA does not preempt a third-party healthcare provider's common law claim for negligent misrepresentation because preemption of third-party provider claims "does not serve Congress's purpose for ERISA." 32 F.3d at 1533. Specifically, preempting the claims of third-party health care providers "would defeat" Congress's goal of "protect[ing] the interests of employees and beneficiaries covered by benefit plans" because "the 'commercial realities' of the health care industry require that health care providers be able to rely on insurers' representations as to coverage." *Id*. (cleaned up).

15

An instructive Middle District of Florida decision recently addressed similar payment claims brought by a third-party provider against an insurer, including ones arising under some of the statutes at issue in this case. *Sarasota Cty. Pub. Hosp. Bd. v. Blue Cross & Blue Shield of Fla., Inc.*, 511 F. Supp. 3d 1240 (M.D. Fla. 2021).  There, in light of the purposes underlying ERISA, the court held that the state-law claims were not preempted. *Id.* at 1247.  Specifically, the court observed that "state law claims brought by health care providers against plan insurers have too remote an effect on ERISA plans to be preempted by the Act." *Id*. at 1247 (collecting cases).  The court added: "a health care provider's claim against [an insurer] under the plan affects the relationship between the principal ERISA entities at best only indirectly," and explained that preemption would negatively impact healthcare providers, highlighting that providers were not parties to the ERISA bargain and that ERISA preemption would leave a provider without practical recourse. *See id.* at 1247.  The court concluded that preemption would therefore only undermine ERISA's stated purpose, because plan participants and beneficiaries might become subject to "up-front payments or raised fees." *Id*. at 1248.

Furthermore, the Second Circuit has reasoned that lawsuits "neither interfer[ing] with the relationships among core ERISA entities nor tend[ing] to control or supersede their functions" do not risk "undermining the uniformity of the administration of benefits. . . ." *Stevenson v. Bank of New York Co*., 609 F.3d 56, 61 (2d Cir. 2010) (cleaned up).  Accordingly, this Court has allowed a third-party provider's promissory estoppel claim to survive a motion to dismiss where the claim did not "bear on any relationships between core ERISA entities," "implicate the substantive terms of the patient's plan," nor "create any ongoing legal obligations under the plan." *Aesthetic & Reconstructive Breast Ctr., LLC v. United HealthCare Grp., Inc*., 367 F. Supp. 3d 1, 10-11 (D. Conn. 2019).

16

I find the reasoning of *Lordmann, Sarasota*, *Stevenson,* and *Aesthetic & Reconstructive Breast Center* persuasive with respect to the Laboratories' common law claims.  Although ERISA expressly governs relations among its traditional entities, third-party healthcare providers like the Laboratories "orbit the periphery."  *Plastic Surgery Center, P.A.*, 967 F.3d at 236.  Under Section 502, Congress endowed subscribers and beneficiaries express federal causes of action to enforce the statute's protections.  Under Section 514, Congress limited plan liability to benefit employers and insurers.  Out-of-network providers like the Laboratories "were not . . . party to this bargain."  *Id.*  Accordingly, lower courts have held "with near unanimity" that "independent state law claims of third party healthcare providers are not preempted by ERISA."  *Surgery Ctr. of Viera, LLC v. UnitedHealthcare, Inc.,* 465 F. Supp. 3d 1211, 1221 (M.D. Fla. 2020) (citing *Rocky Mountain Holdings, LLC v. Blue Cross and Blue Shield of Florida, Inc*., 6:08-cv-686-Orl-19KRS, 2008 WL 3833236, at *2 (M.D. Fla. Aug. 13, 2008);  *In Home Health, Inc. v. Prudential Ins. Co. of Am*., 101 F.3d 600, 606 (8th Cir. 1996);  *Meadows v. Employers Health Ins*., 47 F.3d 1006 (9th Cir. 1995);  *Hospice of Metro Denver, Inc. v. Group Health Ins. of Okla., Inc*., 944 F.2d 752 (10th Cir. 1991);  *Mem. Hosp. Sys. v. Northbrook Life Ins. Co*., 904 F.2d 236 (5th Cir. 1990)).  I agree.

Thus, Cigna's reliance on *Ingersoll-Rand Co. v. McClendon* is inapposite.  498 U.S. 133 (1990).  There, the state common law claim that the Court held to be preempted by ERISA rendered it illegal for an employee to be discharged to prevent his attainment of benefits under a plan making express reference to and covered by ERISA.  498 U.S. at 135.  In reaching its conclusion, the Court noted that, in order to prevail, a plaintiff must plead that "an ERISA plan exists and the employer had a pension-defeating motive in terminating the employment," such that the "trial court's inquiry must be directed to the plan."  *Id*.  at 140.  The Court added that

17

section 514(a) was intended to "minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government," and that "[a]llowing state based actions like the one at issue here would subject plans and plan sponsors to burdens not unlike those that Congress sought to foreclose through § 514(a)." *Id*. at 142.  But the Court further opined that, even if there was no express preemption, the cause of action would be preempted because it conflicts directly with Section 510 of ERISA, which renders it unlawful for any person to discharge a participant or beneficiary "for the purpose of interfering with the attaining of any right to which such participant may become entitled under the plan." *Id*. at 484-85 (citing 29 U.S.C. § 1140).

Accordingly, I hold that the Laboratories' claims do not have an impermissible connection with ERISA and are not preempted, except to the extent that they raise state-law statutory claims for reimbursement from ERISA-covered plans.  Any such claims are **dismissed**.

b.   "Reference To" ERISA Plans

Cigna also argues that Laboratories' claims are preempted on the basis of making impermissible "reference to" ERISA plans because I will "necessarily look to the underlying plans themselves for the applicable coverage and payment terms."  Cigna's Mem. of Law, Doc. 51-1, at 8-9 (citing *Gobeille*, 577 U.S. at 319).  I am not persuaded.

To assess whether state law impermissibly makes reference to ERISA, I evaluate whether the law "acts immediately and exclusively upon ERISA plans" or "the existence of ERISA plans is essential to the law's operation."  *Gobeille,* 577 U.S. at 319.  Such law is preempted when predicated on an ERISA plan or plan administration, *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47-48 (1987), or where the plan is a "critical factor in establishing liability," *Ingersoll-Rand*, 498

U.S. at 139-40.  In contrast, "a generally applicable statute that makes no reference to, or indeed functions irrespective of, the existence of an ERISA plan" is not preempted.  *Id*. at 139.

I have already determined that the Laboratories' state-law statutory claims are preempted to the extent that they involve services provided to beneficiaries of ERISA plans because they have an impermissible connection with ERISA plans, but I also conclude that they make impermissible reference to ERISA plans.  The Second Circuit has held that the ERISA preempts reimbursement claims based on state statutes that "provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee."  *Paneccasio v. Unisource Worldwide, Inc*., 532 F.3d 101, 114 (2d Cir. 2008) (citation omitted).  Accordingly, courts within the Second Circuit have dismissed causes of action arising under the New York prompt payment scheme, N.Y. Ins. L. § 3224-a, as expressly preempted because they refer to ERISA plans.  For example, the Eastern District of New York has held that the New York "Prompt Payment Law cause of action" is preempted because it "grounds itself in the rights and obligations expressed in—and therefore 'refers to'—an ERISA plan," *Neurological Surgery, P.C. v. Aetna Health*, 511 F. Supp. 3d 267, 290 (2021), and "merely seeks an alternative cause of action for [ERISA] claims," *Neurological Surgery, P.C. v. Siemens Corp*., No. 17-cv-3477 (ADS/AKT), 2017 WL 6397737, at \*6 (E.D.N.Y. Dec. 12, 2017).[2]

---

[2] Several decisions by courts in the Second Circuit have applied similar reasoning to hold prompt payment causes of action completely preempted under Section 502.  *See Neurological Surgery, P.C. v. Northrop Grumman Sys. Corp*., No. 2:15-cv-4191, at \*10 (DRH/AKT), 2017 WL 389098 (E.D.N.Y. Jan. 26, 2017) (an "attempt to circumvent ERISA," decided under Section 502); *Beth Israel Med. Ctr. v. Goodman*, No. 12-cv-1689 AJN, 2013 WL 1248622, at \*4 (S.D.N.Y. Mar. 26, 2013); *Weisenthal v. United Health Care Ins. Co. of New York*, No. 07-cv-0945 (LAP), 2007 WL 4292039, at \*7 (S.D.N.Y. Nov. 29, 2007); *Berry v. MVP Health Plan, Inc*., No. 06-cv-120, 2006 WL 4401478, at \*5 (N.D.N.Y. Sept. 30, 2006).

Accordingly, the Laboratories' prompt payment claims are preempted to the extent that they arise from claims for reimbursement for services provided to beneficiaries under ERISA plans. Any such claims are dismissed.

With respect to Counts II through IV, the common law causes of action, Cigna argues that the Laboratories' claims for relief are "nothing more than an attempt to receive benefits under health plans governed by ERISA." Cigna's Mem. of Law, Doc. No. 51-1, at 9. Importantly, it is not apparent at this stage of the litigation that all— or even any— of the disputed claims relate to services provided to beneficiaries of ERISA plans; those services could have been provided exclusively to privately-purchased insurance. Even if ERISA plans are at issue, however "[t]he mere fact that a claim arises against the factual backdrop of an ERISA plan does not mean it makes 'reference to' that plan." *Plastic Surgery Center, P.A.*, 967 F.3d at 236.

At this stage of the proceedings, I am required to accept all allegations in the complaint as true or view them in the light most favorable to the Laboratories. As out-of-network providers without contracts and assignments of benefits, they plead that they intend for this Court to enforce obligations— implied promises or contracts arising from coverage confirmations by Cigna employees and Cigna's conduct— that are independent of the express terms of ERISA plans or other insurance policies. An "alleged promise of reasonable payment is distinct from any obligations that [the insurer] might have had under the plan to the patient." *Aesthetic & Reconstructive Breast Ctr., LLC*, 367 F. Supp. 3d at 10*; see also McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc*., 857 F.3d 141, 151 (2d Cir. 2017) (holding that a promissory estoppel claim was not completely preempted under Section 502 because it was "simply a suit between a third-party provider and an insurer based on the insurer's independent promise").

Cigna relies in part on *Neurological Surgery, P.C. v. Aetna Health.*, a case in which the Eastern District of New York held that third-party providers' implied-in-fact contract, unjust enrichment, and tortious interference claims were preempted by the ERISA.  511 F. Supp. 267, 289 (2021).  That case is distinguishable.  There, the providers predicated their claims for relief on "pre-authorization, pre-certification, or other requirements," the "source of [which] *is* an ERISA plan," and therefore did not "create a legal duty independent of ERISA."  *Id.* at 28-90 (emphasis original).  Here, the policies issued by Cigna do not necessarily insure ERISA plan participants, and the Laboratories do not rely exclusively on coverage verifications but also Cigna's alleged course of conduct.  Cigna also cites to *Cole v. Travelers Ins. Co.,* a case in which this Court dismissed state-law claims as preempted.  208 F. Supp. 248 (D. Conn 2002).  But, in that case, there was no dispute that the patients had assigned benefits under an ERISA plan to the provider and that the provider pursued reimbursement under an ERISA plan.  *Cole*, 208 F. Supp. 2d at 251.  Here, again, the Laboratories allege independent legal duties not necessarily tied to ERISA plans.  Accordingly, those decisions are distinguishable.

Setting aside the merits of the Laboratories' allegations to focus solely on the preemption issue, I note that the Laboratories' common law claims for relief are based on Cigna's oral promises and conduct— bases for independent promises— and hold that they do not impermissibly refer to ERISA plans.  The motion to dismiss the common law claims because they impermissibly relate to ERISA plans is therefore **denied**.

## B.  Judicial Estoppel

The defendants next argue that the Laboratories are judicially estopped from asserting that none of their claims for relief is preempted by ERISA, in light of BioHealth Medical

21

Laboratories' and PB Laboratories' two prior lawsuits against Cigna alleging ERISA claims in

the United States District Court for the Southern District of Florida.  *See Biohealth Med. Lab.,*

*Inc. v. Connecticut Gen. Life Ins. Co.*, No. 1:15-CV-23075-KMM (S.D. Fla.) ("*Biohealth I*");

*Biohealth Med. Lab., Inc. v. Connecticut Gen. Life Ins. Co.*, No. 16-cv-20807 (S.D. Fla.)

("*Biohealth II*").  I disagree.

      Judicial estoppel "may prevent a party who benefits from the assertion of a certain

position, from subsequently adopting a contrary position."  *Young v. U.S. Dep't of Justice,* 882

F.2d 633, 639 (2d Cir. 1989).  "It is supposed to protect judicial integrity by preventing litigants

from playing 'fast and loose' with courts, thereby avoiding unfair results and 'unseemliness.'"

*Id*.  The Supreme Court has delineated several factors that inform a court's decision regarding

judicial estoppel:

> First, a party's later position must be clearly inconsistent with its earlier
> position. Second, courts regularly inquire whether the party has succeeded
> in persuading a court to accept that party's earlier position, so that judicial
> acceptance of an inconsistent position in a later proceeding would create
> the perception that either the first or the second court was misled. . . . A
> third consideration is whether the party seeking to assert an inconsistent
> position would derive an unfair advantage or impose an unfair detriment
> on the opposing party if not estopped.

*Uzdavines v. Weeks Marine, Inc.,* 418 F.3d 138, 147 (2d Cir. 2005) (quoting *New Hampshire v.*

*Maine*, 532 U.S. 542, 750-51 (2001)).  The Second Circuit has limited the application of judicial

estoppel to "situations where a party both takes a position that is inconsistent with one taken in a

prior proceeding, and has had that earlier position adopted by the tribunal to which it was

advanced."  *Id.* at 148 (cleaned up).  It has further limited the doctrine to "situations where the

risk of inconsistent results with its impact on judicial integrity is certain."  *Id*.

      Judicial estoppel does not bar the claims in this case.  As an initial matter, Epic Reference

Labs, Inc. was not a party in the two prior lawsuits, and therefore is not judicially estopped from

bringing the instant claims.  More fundamentally, the allegations raised here are not clearly

inconsistent with those in *BioHealth I*,[3] where the plaintiffs alleged that they had obtained an

assignment from the patients for every claim at issue.  More specifically, in *BioHealth I*,

BioHealth Medical Laboratories and PB Laboratories sought to recover payments for services

allegedly provided to Cigna members and their beneficiaries since 2013 and alleged that "the

vast majority of the insurance plans" at issue are covered by ERISA.  *See* Ex. 1, Doc. No. 51-2,

at 3.  They further alleged that, for "every claim [for reimbursement] at issue," they had

"obtained an assignment of benefits."  *Id*. at 7, ¶ 14.

Those allegations are not "clearly inconsistent" with any allegations asserted here.

Instead, the Laboratories are now seeking recovery for distinct claims for reimbursement for

which they were *not* given assignments.  *See* Am. Compl., Doc. No. 47, at ¶ 39 ("Plaintiffs

solely seek payment for services as to which the Laboratories do not have a valid assignment of

benefits from the patient subscriber/beneficiary.").  Because the lawsuits involved different sets

of claims for reimbursement, the allegation in *Bio Health I* that there was an assignment of

benefits for every claim is not squarely at odds with the allegation in the instant complaint that

the Laboratories do not have a valid assignment of benefits for the services in question.  The first

element of judicial estoppel is therefore not met, and the argument is without merit.   Cigna's

motion to dismiss the Laboratories' claims as judicially estopped is **denied**.

C.  Failure to State A Claim Arising Under State Law

Cigna also argues that I should dismiss the Laboratories' state-law causes of action for

failure to state a claim on which relief can be granted.  As an initial matter, Cigna challenges the

Laboratories' statutory claims as providing insufficient allegations of fact and statements of law.

---

[3] Cigna does not argue that the allegations are clearly inconsistent with any position taken in *Biohealth II*.

Next, Cigna moves to dismiss the Laboratories' common law claims of promissory estoppel,

quantum meruit, and third-party beneficiary claims for failure to establish necessary elements.  I

agree in part and disagree in part with Cigna's arguments.

### 1.    The Laboratories' Statutory Claims

In Count I, the Laboratories bring an action for payment arising under Florida insurance

law.  Am. Compl., Doc. No. 47, at 8 (citing to Fla. Stat. §§ 627.6131, 627.638, 627.64194,

627.662, 641.3154, and 641.3155).  Without explicitly stating so, Cigna begins by challenging

the sufficiency of the Laboratories' statutory pleadings under Rule 8 of the Federal Rules of

Civil Procedure.  Cigna's Mem. of Law, Doc. No. 51-1, at 21.

As a threshold matter, the parties seem to disagree regarding whether Second or Eleventh

Circuit law applies when assessing the sufficiency of the pleadings.  I agree with the

Laboratories that Second Circuit law controls, and I decline Cigna's invitation to dismiss the

Laboratories' statutory claims as inadequately pled.

In a diversity action, if a procedural issue is addressed by a valid federal law or Rule,

then the federal court will apply federal procedural law.  *Hanna v. Plummer*, 380 U.S. 460, 465

(1965).  Rule 8 requires that a complaint contain "a short and plain statement of the claim

establishing entitlement to relief."  Fed. R. Civ. P. 8.  Accordingly, this Court is bound by

Second Circuit decisions interpreting Rule 8.

The Second Circuit has "repeatedly emphasized" that Rule 8 "reflects liberal pleading

standards," defined as "simply requiring plaintiffs to disclose sufficient information to permit the

defendant to have a fair understanding of what the plaintiff is complaining about and to know

whether there is a legal basis for recovery."  *Riles v. Semple*, 763 F. App'x 32, 34 (2d Cir. 2019)

(internal quotation marks and citations omitted).   Under the Second Circuit's liberal approach,
Cigna's facial challenges to the sufficiency of the facts and statements of law must fail.

> a.   Sufficiency of the Statements of Fact

First, Cigna argues that the Laboratories' claim is too bare to put it on notice of the
Laboratories' allegations due to "fail[ure] to identify any details regarding the claims for
reimbursement that underlie their claims for relief."  Cigna's Mem. of Law, Doc. No. 51-1, at 21.
Cigna claims that the Laboratories were required to "specifically identify the Cigna members,
services rendered, or 'invoices' at issue" by, for example, including a "sampling, summary, or
chart" in its pleadings.  *Id.* at 14, 21.

Cigna identifies such requirements in Eleventh Circuit law.  *E.g., BioHealth Medical
Lab., Inc. v. Connecticut General Life Ins. Co.*, No. 1:15-cv-23075-KMM, 2016 WL 375012, at
*5-6 (S.D. Fla. Feb. 1, 2016) ("[M]erely claiming that some of the member claims arise under
non-ERISA plans is insufficient to provide fair notice to Cigna."); *United Surgical Assistants,
LLC v. Aetna Life Ins. Co.*, No. 8:14-cv-211, 2014 WL 5420801, at *3 (M.D. Fla. Oct. 22, 2014)
("At a minimum, USA should provide information identifying the patient, procedure performed,
date of the procedure, and transaction amount to allow Aetna to identify health plans at issue.").
But Eleventh Circuit standards are inconsistent with the law in this Court.

In this Court, the state-law claims at issue do not require the level of granularity Cigna
seeks.  A recent District of Connecticut decision, *Aesthetic & Reconstructive Breast Ctr., LLC v.
United HealthCare Grp., Inc.*, is emblematic.  367 F. Supp. 3d 1 (D. Conn. 2019).  There, a
medical provider brought an action for payment after the defendant insurer failed to pay for pre-
authorized surgeries.  *Id.* at 3.  The insurer "complain[ed]" that the plaintiff provider "should
have described aspects of the interaction between the Center and UHG with greater

particularity." *Id.* at 11.  This Court dismissed the insurer's criticism and permitted the claim to proceed because the provider's claim for promissory estoppel was not "subject to the heightened pleading standards of Rule 9(b)." *Id.*

Here, the Laboratories pleadings do not raise issues of fraud or mistake and thus are not subject to the heightened pleading standards under Rule 9(b).  Accordingly, the Laboratories' pleadings are evaluated under our customary, liberal standards.  In my view, the Laboratories set forth sufficient facts to state facially plausible statutory claims in the First Amended Complaint and to provide Cigna with adequate notice of the substance of the allegations of wrongdoing.  For purposes of evaluating a motion to dismiss the Court must accept as true all of a plaintiff's allegations.  The Laboratories' complaint alleges that Cigna confirmed their services were covered, they provided the covered services to Cigna's subscribers, they billed Cigna for such services, and Cigna failed to pay them.  Am. Comp., Doc. No. 47, at 4.  Under the statutory regime elaborated on below, those allegations are sufficient to state a claim. The factual details of the Laboratories' claims are an appropriate topic of discovery, but those details are not necessary to plead a valid claim.

Accordingly, Cigna's motion to dismiss for failure to identify the specific insurance claims at issue is **denied**.

b.  Sufficiency of the Statements of Law

Second, Cigna argues that the Laboratories "fail to satisfy the basic notice pleading standard" of Rule 8 by not identifying the "specific statutory provisions" allegedly violated. Cigna's Mem. of Law, Doc. No. 51-1, at 16-17.  I disagree.

"Under the liberal pleading principles established by Rule 8 of the Federal Rules of Civil Procedure, in ruling on a 12(b)(6) motion '[t]he failure in a complaint to cite a statute, or to cite

the correct one, in no way affects the merits of a claim.  Factual allegations alone are what

matters.'" *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 46 (2d Cir. 1997) (quoting

*Albert v. Carovano*, 851 F.2d 561, 571 n.3 (2d Cir. 1988) (en banc)).

The Laboratories pled with sufficient specificity for this Court— and therefore for

Cigna— to understand their allegations.  Florida Statutes Section 627.638 sets the foundation,

authorizing a provider to collect payments directly from an insurer when the provider has

complied with the procedures outlined in the insurance policy.  Fla. Stat. Ann. § 627.638(2)

("Whenever, in any health insurance claim form, an insured specifically authorizes payment of

benefits directly to any recognized [provider] in accordance with the provisions of the policy, the

insurer shall make such payment to the designated provider of such services.").  Section

627.64194 holds "[a]n insurer [] solely liable for payment of fees to a nonparticipating provider

of covered nonemergency services provided to an insured," presumably the kinds of services at

issue here, "in accordance with the coverage terms of the health insurance policy. . . ."  Fla. Stat.

Ann. § 627.64194(3); *see also id*. § 627.64194(2) (governing emergency services).[4]

After services have been rendered and proof of loss provided, Florida law requires

prompt payment or denials of insurance claims.  A proper electronic claim "must be paid or

denied" within ninety days; if the insurer neither pays nor denies the claim within 120 days after

receipt, the insurer incurs an "uncontestable obligation" to pay.  Fla. Stat. Ann. § 627.6131(4)(e).

For non-electronically submitted claims, the statute contemplates a deadline of 120 days for

payment or denial and 140 days to incur an uncontestable obligation.  *Id*. § 627.6131(5).

Under this statutory scheme, the Laboratories allege sufficient facts to provide notice of

their allegations that: they verified Cigna subscribers' coverage of their services; subscribers

---

[4] The Laboratories' pleadings do not specify whether the Laboratories provided emergency, nonemergency, or both kinds of services.

received covered services rendered by their laboratories; the Laboratories billed Cigna for those services; for some of the claims at issue, Cigna received but neither paid nor denied the claims within the statutory time limit; and thus Cigna incurred an "uncontestable obligation" to pay the Laboratories for the outstanding claims.  Am. Compl., Doc. No. 47, at 4.

Cigna cites to *Bepko v. St. Paul Fire & Marine Insurance Co*. to support its allegations that the pleadings fail to meet the standards under Rule 8.  No. 3:04 CV 01996 PCD, 2005 WL 3619253, at *4 (D. Conn. Nov. 10, 2005)).  There, the plaintiff alleged that the defendant had "violat[ed] 'one or more'" subsections of the Connecticut Unfair Insurance Practices Act, Connecticut General Statute § 38a–816 ("CUIPA").  *Id*.  This Court dismissed, reasoning that referring broadly to a statute with twenty-two subsections did not put the defendant "on reasonable notice of what subsection was violated."  *Id*.

I perceive two problems with invoking *Bepko* here.  First, unlike the Second Circuit's decisions in *Northrop* and *Carovano,* it is not binding authority.  Second, it is distinguishable from the instant matter.  There, this Court had an independent basis on which to dismiss: the plaintiff had not pled that the alleged unlawful settlement practice was a routine business practice, an essential element of the CUIPA claim.  *Id*.  Moreover, that such settlements were not routine suggests that CUIPA was unfamiliar to the defendant, such that the defendant did not receive subjectively reasonable notice of its varied and discrete subsections.  *Id*.  In the instant case, it is reasonable to infer Cigna is familiar with the statutory scheme at issue, which governs its core industry and under which Cigna has been subject to other litigation.  *See N. Shore Med. Ctr., Inc. v. Cigna Health & Life Ins. Co*., No. 1:20-CV-24914-KMM, 2021 WL 3419356, at *2 (S.D. Fla. May 10, 2021) (raising claims under the Florida insurance laws at issue); *Orthopaedic Care Specialists, P.L. v. Cigna Health & Life Ins. Co*., No. 20-82142-CIV, 2021 WL 389130, at

*1 (S.D. Fla. Jan. 15, 2021) (same); *Surgery Ctr. of Viera, LLC v. Cigna Health,* No.

620CV152ORL37EJK, 2020 WL 4227428, at *1 (M.D. Fla. July 23, 2020) (same).  Under the

circumstances, the notice Cigna received was more reasonable than the notice the *Bepko*

defendant received.

Accordingly, Cigna's motion to dismiss for failure to identify the specific statutory

subsections at issue is **denied**.

   c.   Inapposite Statutes

On the other hand, certain other statutes listed in the complaint appear to have no

connection to the Laboratories' claims.  Section 627.662 merely outlines the provisions that

apply to "group health insurance, blanket health insurance, and franchise health insurance."  Fla.

Stat. Ann. § 627.662.  Sections 641.3154 and 641.3155 are also not relevant because those

statutes place obligations on "health maintenance organizations," not insurance companies, and

the Laboratories have not alleged that Cigna is a health management organization.  *See Dearmas*

*v. Av-Med, Inc*., 814 F. Supp. 1103, 1107 (S.D. Fla. 1993) ("This Court is guided by Eleventh

Circuit precedent which has held that a [health maintenance organization] is not an insurance

company. . . .") (citing *O'Reilly v. Ceuleers,* 912 F.2d 1383, 1389 (11th Cir. 1990)); *see also*

*O'Reilly v. Ceuleers*, 912 F.2d 1383, 1385 (11th Cir. 1990) ("Under state law, a 'Health

Maintenance Organization' is any organization which provides, directly or indirectly, health care

services to persons on a prepaid, fixed-sum basis; which provides health care services which

subscribers might reasonably require to maintain good health; or which provides physician

services directly through physicians who are either employees or partners of such organization or

by arrangements with any physician or physicians.") (citing Fla. Stat. Ann. § 641.19(6)(a), (b),

(c)).

Accordingly, the claims arising under Sections 627.662, 627.3154, and 641.3155 are **dismissed without prejudice**. If the Laboratories wish to raise claims for relief under those three statutes, they may amend their complaint.

### 2. The Laboratories' Common Law Claims

In Counts II-IV, the Laboratories allege violations of Florida common law under the theories of promissory estoppel, quantum meruit, and breach of third-party beneficiary contracts. The parties again disagree about which state's substantive common law to apply when evaluating whether those claims state valid claims for relief. Cigna generally marshals Connecticut common law. *E.g.,* Cigna's Mem. of Law, Doc. No. 51-1, at 17 ("Under Connecticut law, the doctrine of promissory estoppel. . . ."). In contrast, the Laboratories rely upon Florida common law. Laboratories' Opp'n, Doc. No. 57, at 8. I agree with the Laboratories that Florida common law applies.

It is well-settled that "[a] federal court sitting in diversity . . . must apply the choice of law rules of the forum state." *Klaxon Co. v. Stentor Elec. Mfg. Co*., 313 U.S. 487, 496 (1941); *Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989). Connecticut employs "the 'most significant relationship' approach of the Restatement (Second) of Conflict of Laws[ ] for analyzing choice of law issues involving contracts." *Interface Flooring Sys., Inc. v. Aetna Cas. and Sur. Co*., 261 Conn. 601, 608 (2002). Section 188 of the Restatement (Second) of the Conflict of Laws "provides in relevant part: . . . The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties. . . ." *Id*. at 608–09 (quoting Restatement (Second) of Conflict of Laws § 188) (cleaned up).

This lawsuit addresses alleged "failure to pay invoices for testing that occurred in Florida pursuant to Cigna's policies issued in Florida." Laboratories' Opp'n, Doc. No. 57, at 8. The Laboratories allege injuries occurring in Florida related to rights and duties affected by Florida law. Plainly the state with the most significant relationship to the issues is Florida. Thus, the common law claims are most appropriately governed by Florida common law.

a.   Promissory Estoppel

In Count II, the Laboratories allege that Cigna consented to their performance of services via "express confirmation of coverage" and through the parties' "course of dealing," inducing its reliance for the continued delivery of services and warranting estoppel of Cigna's denial of claims. Am. Compl., Doc. No. 47, at 10. Cigna argues that the Laboratories fail to allege a "definite promise" to pay necessary to establish a claim of promissory estoppel. Cigna's Mem. of Law, Doc. No. 51-1, at 24. I agree with Cigna.

Florida law permits the extension of insurance coverage "where to refuse to do so would sanction fraud or other injustice." *Morse, LLC v. United Wisconsin Life Ins. Co.*, 356 F. Supp. 2d 1296, 1300 (S.D. Fla. 2005) (internal citation omitted). To establish a prima facie case of promissory estoppel, a plaintiff must prove "[1] that [it] detrimentally relied on the defendant's promise, [2] that the defendant reasonably should have expected the promise to induce reliance in the form of action or forbearance by the plaintiff, and [3] that injustice can only be avoided by enforcement of the promise." *Id.*

Under the first prong, a defendant's promise must have been "definite" and "affirmative." *Morse,* 356 F. Supp. at 1330 ("affirmative"); *Peacock Med. Lab, LLC v. UnitedHealth Grp., Inc.*, No. 14-81271-CV, 2015 WL 2198470, at *5 (S.D. Fla. May 11, 2015) (quoting *W.R. Grace & Co. v. Geodata Servs., Inc.*, 547 So. 2d 919, 924 (Fla. 1989)) ("definite"). In addition, a

31

plaintiff's reliance must be reasonable. *Peacock Med. Lab,* 2015 WL 2198470 at *5. On that basis, the Laboratories have not adequately pled a claim of promissory estoppel.

First, the Laboratories have not alleged that Cigna made a definite promise to pay the insurance claims at issue. They do not allege that Cigna made "affirmative" statements assuring the Laboratories that it would pay the costs of their medical testing services, nor that Cigna made a definite promise to pay some hypothetical price for services provided. Rather, the Laboratories suggest that Cigna's verification that insureds were covered for the services provided implied a promise to pay for such services. Am. Compl., Doc. No. 47, at 10.

Under Florida law, "[a] verification of coverage, without more, is not a promise to pay a certain rate to support a promissory estoppel claim." *N. Shore Med. Ctr., Inc. v. Cigna Health & Life Ins. Co*., No. 1:20-CV-24914-KMM, 2021 WL 3419356, at *6 (S.D. Fla. May 10, 2021). Indeed, Florida courts have repeatedly rejected coverage verifications as the basis of promissory estoppel claims. *See, e.g., id.; Chiron Recovery Ctr., LLC v. United Healthcare Servs., Inc*., No. 9:18-CV-81761-ROSENBERG/REIHNART, 2020 WL 3547047, at *8 (S.D. Fla. June 30, 2020); *Peacock Med. Lab*, 2015 WL 2198470, at *5; *Vencor Hosps. S., Inc. v. Blue Cross & Blue Shield of R.I.*, 86 F. Supp. 2d 1155, 1165 (S.D. Fla. 2000), *affd sub nom*., *Vencor Hosps. v. Blue Cross Blue Shield of R.I*, 284 F.3d 1174 (11th Cir. 2002). Rather than a "definite promise to pay upon which reliance would be reasonable," Florida courts have held that confirmation of coverage merely represents to a provider that patients are "covered for the *type* of treatment proposed by the health care provider." *Peacock Med. Lab*, 2015 WL 2198470, at *5 (emphasis added). As a matter of Florida law, mere verification of coverage is insufficient to state a claim for promissory estoppel.

For additional support, the Laboratories cite to the parties' prior course of dealing.  But

Florida courts have also dismissed promissory estoppel claims where medical providers frame an

insurer's course of conduct as a promise to pay.  *See, e.g.*, *Variety Children's Hosp., Inc. v.*

*Century Med. Health Plan, Inc.*, 57 F.3d 1040, 1043 (11th Cir. 1995) ("It certainly cannot be the

case that every initial certification for treatment obligates the plan to pay for any treatment that

may subsequently be proposed or provided."); *N. Shore Med. Ctr.*, 2021 WL 3419356, at *6;

*Chiron Recovery Ctr.*, 2020 WL 3547047, at *8.  A course of conduct is "not a promise"—

certainly not the affirmative and definite promise required by law— and thus "does not 'raise a

right to relief above [a] speculative level.'"  *N. Shore Med. Ctr.*, 2021 WL 3419356 at *6

(quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007)) (internal citation omitted).

The Laboratories attempt to distinguish their promissory estoppel claim by arguing that

the *combination* of confirmation of coverage and a course of dealing constituted a promise on

which they reasonably relied, but Florida courts have declined to treat the sum of verification and

course of dealing as greater than its parts.  For example, in *North Shore Medical Center v. Cigna*,

the Southern District of Florida dismissed a medical provider's promissory estoppel claim

alleging both verification of coverage and a prior course of dealing for "absence of any specific

or definitive promise to pay."  *N. Shore Med. Ctr.*, 2021 WL 3419356 at *6.

Furthermore, the Laboratories' argument fails as a matter of common sense, because the

parties' course of conduct could not reasonably have justified the Laboratories' reliance.

According to the Laboratories' allegations, Cigna failed to pay almost as much as it actually paid

for "identical" services billed with "identical" invoices.  Compl., Doc. No. 46, at 10

($37,687,349.19 paid, $32,074,089.64 unpaid).  The Laboratories allege no reason to distinguish

the paid from unpaid claims for reimbursement that might justify reasonable reliance.  On the

allegations in these pleadings, it would not have been reasonable for the Laboratories to rely on Cigna's record of intermittent payment.

Due to the absence of an allegation of a definitive promise to pay and reasonable reliance, the Laboratories' promissory estoppel claim fails and is **dismissed without prejudice.**

### b.  Breach of Implied Contract

In Count II, the Laboratories also allege breach of an implied contract, though they do not specify whether the contract was implied in fact or law.  Cigna asserts, either way, that the Laboratories fail to establish any "actual agreement to pay Plaintiffs," which is necessary for a contract.  Cigna's Mem. of Law, Doc. No. 51-1, at 18.  Here, too, I agree with Cigna.

#### i.  Breach of Implied-in-Fact Contract

First, the Laboratories fail to state a claim for breach of implied-in-fact contract.  An implied-in-fact contract entails the same legal elements as an express contract: offer, acceptance, and consideration.  Any valid contract requires a manifestation of mutual assent, even if implied by conduct.  Rest. (Second) of Contracts § 24 (1981).  The key point is that an implied-in-fact contract "rest[s] upon the assent of the parties."  *Peacock Med. Lab*, WL 2198470 at *5 (quoting *Gem Broad., Inc. v. Minker*, 763 So. 2d 1149, 1150 (Fla. 4th DCA 2000)).

Neither coverage confirmations nor the parties' course of conduct give rise to an inference that Cigna manifested its assent.  Under Florida law, a confirmation of coverage does not constitute assent to some undefined terms.[5]  For example, in *RMP Enterprises, LLC v. Connecticut Gen. Life Ins. Co*., the plaintiffs were out-of-network healthcare providers for whom Cigna had provided oral verifications of coverage.  No. 9:18-CV-80171, 2018 WL 6110998, at

---

[5] Connecticut law departs on this point, holding verification sufficient. *See, e.g.*, *Aesthetic & Reconstructive Breast Ctr., LLC v. United HealthCare Grp., Inc.*, 367 F. Supp. 3d 1, 11 (D. Conn. 2019).

*8 (S.D. Fla. Nov. 21, 2018). The Southern District of Florida dismissed the providers' claim, again reasoning that "an insurer's verification of coverage is not a promise to pay a certain amount" and concluding that verification "cannot be construed as a binding contractual agreement." *Id.* (citation omitted). The court dismissed the breach of implied contract claim for want of the most essential element, an agreement. *Id.*

Second, Florida courts have rejected combining coverage verifications with a course of conduct, because the combination is insufficient to give rise to a promise to pay. *See, e.g., Chiron Recovery Ctr.*, 2020 WL 3547047, at *8 ("[Provider] has alleged that routine course of dealing and routine coverage verification formed a contract, but this is a proposition solidly rejected by courts throughout the country, and this Court has rejected such a contention in the past.").

Relying wholly on verification of coverage and the parties' course of dealing, the Laboratories have failed to allege that Cigna manifested assent to pay for the disputed claims. Thus, the Laboratories have failed to allege the contract necessary to give rise to a breach of contract claim. The Laboratories' claim for breach of implied contract is **dismissed without prejudice.**

### c. *Quantum Meruit*

In Count III, the Laboratories raise a claim of *quantum meruit*. Am. Compl., Doc. No. 47, at 11. The Laboratories allege that they provided services to Cigna subscribers, *id.*, and propose that Cigna benefitted because it would have been obligated to pay a different testing services provider, thus retaining a benefit by not evading such financial obligations, Laboratories' Opp'n, Doc. No. 57, at 21. Cigna moves to dismiss this claim, arguing that it did not benefit from the Laboratories' services and, citing to Connecticut law, that it did not

"knowingly accept" nor indicate intent to compensate the Laboratories for such services. Cigna's Mem. of Law, Doc. No. 51-1, 18-19. The Connecticut standard is inapplicable to this case, and I decline the invitation to dismiss the Laboratories' *quantum meruit* claim.

To plead a theory of *quantum-meruit*, a plaintiff must allege that "(1) it conferred a benefit on the defendant; (2) the defendant had knowledge of the benefit; (3) the defendant accepted or retained the benefit; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying its fair value." *Martin Energy Servs., LLC v. M/V BRAVANTE IX*, 733 F. App'x 503, 506 (11th Cir. 2018).

There is a "clear split of authority" in Florida courts regarding whether an insurer benefits when a provider serves its subscribers. *Surgery Center of Viera, LLC v. Cigna Health and Life Ins. Co.*, No. 6:19-cv-2110-Orl-22DCI, 2020 WL 686026, at *8 (M.D. Fla. Feb. 11, 2020); *see also Baycare Health Sys., Inc. v. Medical Sav. Ins. Co.*, No. 8:07-cv-1222-T-27TGW, 2008 WL 792061 (M.D. Fla. Mar. 25, 2008) ("Whether healthcare treatment to insureds constitutes a 'direct' benefit to the insurance company, or a benefit at all, is unclear, and is a source of disagreement in courts within the Middle District of Florida."). Some Florida courts have held that the provision of medical services to a subscriber does not benefit the insurer. *E.g., Peacock Med. Lab*, 2015 WL 2198470 at *5 ("[A] healthcare provider who provides services to an insured does not benefit the insurer."); *Hialeah Physicians Care, LLC v. Connecticut Gen. Life Ins. Co.*, No. 13-21895-CIV, 2013 WL 3810617, at *4 (S.D. Fla. July 22, 2013) ("[A medical practice] can hardly be said to have conferred any benefit, even an attenuated one, upon the Plan's insurer by providing Plan beneficiaries with health care services."); *Adventist Health Sys./ Sunbelt, Inc. v. Med. Sav. Ins. Co.*, No. 6:03-CV-1121-ORL-19, 2004 WL 6225293, at *6 (M.D. Fla. 2004) ("[A] third party providing services to an insured confers nothing on the insurer

except, a ripe claim for reimbursement, which is hardly a benefit.").  On the other hand, other

courts have decided the issue differently.  *E.g.*, *Surgery Ctr. of Viera, LLC v. Meritain Health,*

*Inc.,* No. 619CV1694ORL40LRH, 2020 WL 7389987, at *12 (M.D. Fla. June 1, 2020), *report*

*and recommendation adopted*, No. 619CV1694ORL40LRH, 2020 WL 7389447 (M.D. Fla. June

16, 2020) (holding that allegations that a provider "conferred a direct benefit upon Defendants by

providing Defendants' insured/member . . . with medical services . . . entitled under the Plan

document/insurance policy as evidenced by the partial compensation tendered" were sufficient to

state a claim); *Surgery Center of Viera, LLC v. Cigna Health and Life Ins. Co.*, No. 6:19-cv-

2110-Orl-22DCI, 2020 WL 686026, at *8 (M.D. Fla. Feb. 11, 2020) ("Thus, this Court finds it is

not necessary at this stage of the litigation to allege more than what Surgery Center has already

alleged—that it provided services that allegedly conferred a benefit, it was not paid the entire

balance due for the services, and that it would be inequitable for Surgery Center to not be paid

for the services rendered.").  Given the unsettled nature of Florida law, I am inclined to let this

claim survive at this early stage of litigation.

Accordingly, Cigna's motion to dismiss the Laboratories' claim for *quantum meruit* is

**denied**.

> d.   Third Party Beneficiary Claims

The Laboratories claim that they are the intended third-party beneficiaries of the

insurance contracts between Cigna and its subscribers.  Am. Compl., Doc. No. 47, at 12.  In

effect, they argue that Cigna breached its insurance contracts with its own subscribers by failing

to pay for the Laboratories' services.  *Id.*  Cigna argues that the Laboratories fail to allege that

there was a clear or manifest intent by it and its subscribers that the contract directly benefit the

Laboratories.  Cigna's Mem. of Law, Doc. No. 51-1, at 19.  In addition, Cigna invokes

Connecticut law in arguing that the Laboratories must show that Cigna had "knowingly" accepted the Laboratories' services. *Id.* I reject the scienter standard arising from inapplicable law, and I turn to the core issue of the parties' intent.

To plead a claim for breach of a third-party beneficiary contract, a plaintiff must allege the following four elements: "(1) existence of a contract; (2) the clear or manifest intent of the contracting parties that the contract primarily and directly benefit the third party; (3) breach of the contract by a contracting party; and (4) damages to the third party resulting from the breach." *Found. Health v. Westside EKG Assocs.*, 944 So. 2d 188, 194–95 (Fla. 2006) (internal citations omitted). Under Florida law, a non-participating provider may be acknowledged as "primarily and directly benefit[ing]" from an insurance contract between an insurer and insured. *Id.* at 198 (holding that nonparticipating providers are not precluded from alleging that an insurance contract evinces the clear and manifest intent required to be recognized as third-party beneficiaries)); *see also Vencor Hosps. v. Blue Cross Blue Shield of R.I.*, 169 F.3d 677, 680 (11th Cir. 1999). However, providers still have the burden to plead the "clear or manifest intent" of the contracting parties. *Columna, Inc. v. Aetna Health, Inc.*, No. 9:19-CV-80522, 2019 WL 4345675, at *3 (S.D. Fla. Sept. 12, 2019) (dismissing a breach of third-party beneficiary claim where the provider failed to allege sufficient facts to infer the insurer and insured intended to benefit it).

Here, the Laboratories successfully state a claim. They admit that they have no direct contract with Cigna, Am. Compl., Doc. No. 47, at 5, and they submit no contractual language in insurance policies illustrating that providers such as themselves are the intended beneficiaries of subscribers' policies. But the Laboratories persuasively argue that the Cigna's subscribers'

policies incorporate Florida Statutes Section 627.6131, requiring insurers to pay benefits after being provided written proof of loss.

I find the reasoning of the *Peacock Medical Laboratory* court persuasive.  There, a medical testing laboratory sued to recover for unpaid urinalyses.  *Peacock Med. Lab*, 2015 WL 2198470, at *1.  Although the testing service similarly did not rely on contractual language identifying it as a third-party beneficiary, the court constructively recognized that the insurer had breached its contracts with its subscribers.  *Id.* at *4.  "[W]here parties contract upon a subject which is surrounded by statutory limitations and requirements," those parties are "presumed to have entered into their engagements with reference to such statute" such that the statutes "enter[] into and become[] a part of the contract."  *Id*. at *4.  As a result, the plaintiff plausibly alleged that the insurer was bound to pay.

Here, Florida law— including Florida Statutes Section 6131(1)— governs the transactions at issue, including the policies Cigna issued to its subscribers.  As a result, I will read into the insureds' policies a default rule that Cigna was constructively bound by the terms of Section 627.6131.  On that basis, the Laboratories have stated a plausible claim for relief.

Accordingly, Cigna's motion to dismiss the Laboratories' third-party beneficiary claims is **denied.**

## IV.    Conclusion

For the foregoing reasons, I **grant in part and deny in part** Cigna's motion to dismiss, Doc. No. 51.

(1) To the extent that the Laboratories state-law statutory claims arise from services provided to beneficiaries of ERISA plans, those claims are preempted and **dismissed with prejudice**.  To the extent that the Laboratories raise state-law statutory claims arising from

services provided to beneficiaries of non-ERISA plans, such claims are **not preempted** and may proceed.

(2) To the extent that the Laboratories' common law claims arise from obligations independent of the express terms of ERISA plans or other insurance policies, those claims are **not preempted** and may proceed.

(3) Cigna's motion to dismiss the Laboratories' claims as judicially estopped is **denied**.

(4) Cigna's motion to dismiss the Laboratories' claims as insufficiently pled for failure to identify the specific claims for reimbursement at issue is **denied**.

(5) Cigna's motion to dismiss the Laboratories' claims as insufficiently pled for failure to identify the specific statutes at issue is **denied**.  To the extent that the Laboratories' raise causes of action under Florida Statutes §§ 627.662, 627.3154, and 641.3155, those claims are **dismissed without prejudice**.

(6) The Laboratories' promissory estoppel claim is **dismissed without prejudice**.

(7) The Laboratories' breach of implied contract claim is **dismissed without prejudice.**

(7) Cigna's motion to dismiss the Laboratories' *quantum meruit* claim is **denied**.

(8) Cigna's motion to dismiss the Laboratories' third-party beneficiary claims is **denied**.

Accordingly, the Laboratories' surviving causes of action are:  (1) Count I (statutory claims), except to the extent those claims seek reimbursement under ERISA-covered plans or arise under Florida Statutes §§ 627.662, 627.3154, and 641.3155; (2) Count III (quantum meruit); and (3) Count IV (third-party beneficiary claims).

The plaintiffs may file a further amended complaint within 30 days.  The dismissals without prejudice will become dismissals with prejudice unless the plaintiffs file an amended complaint curing the noted pleading deficiencies.

So ordered.

Dated at Bridgeport, Connecticut, this 30 day of September 2021.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge